JOHNSON, Gilbert P. and Johnson, Hervey M.

v.

Samuel J. TRUEBLOOD, Arnold E. Trueblood, Harvey I. Salwen, and Penn Eastern Development Company.

Gilbert Johnson and Hervey Johnson, Individually and derivatively on behalf of Penn Eastern Development Corporation, plaintiffs above named and their counsel *pro hac vice* below, Myron M. Cherry, Appellants.*

No. 79-2525.

United States Court of Appeals, Third Circuit.

Argued March 18, 1980.

Decided July 31, 1980.

As Amended Aug. 25, 1980.

See also: 3rd Cir., 629 F.2d 287.

* Technically, there was no entrance of an appearance of counsel for the Johnson appellants in this case. Nevertheless, there was an appearance entered for these appellants in No. 79-1892, and the court believes that the failure to mention this appeal in that document was a mere inadvertence.

Jerome J. Shestack (argued), Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellant Myron M. Cherry.

Steven E. Angstreich (argued), Martin M. Krimsky, Krimsky, Luterman, Stein & Levy, Philadelphia, Pa., for Samuel J. and Arnold E. Trueblood.

Richard M. Squire (argued), Roslyn G. Pollack, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for Harvey I. Salwen.

Before SEITZ, Chief Judge, and ROSENN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

The plaintiffs, Hervey and Gilbert Johnson, and their Chicago attorney, Myron M. Cherry, appeal an order of the district court revoking Cherry's pro hac vice status. The facts of the underlying suit between the plaintiffs and the various defendants are set out in our opinion in the separate appeal in *Johnson v. Trueblood,* 629 F.2d 287 (3d Cir.1980). On July 3, 1979, the jury gave a verdict for the defendants. On July 6, the notice of appeal was filed in No. 79-1892. On July 19, with out any prior notice or a hearing, the district court sua sponte revoked Cherry's pro hac vice status retroactively to the date of the verdict.[1] The revocation was based on the attorney's conduct during the trial.

1. We note that the facts of this case are somewhat unusual in that the revocation order was not entered until after the notice of appeal was filed. Thus we are not presented with the question of what sort of procedures are appropriate for disciplining pro hac vice attorneys during the course of trial.

## I.

We initially consider our jurisdiction to hear the appeal by an attorney and his clients of an order revoking the attorney's pro hac vice status. As to the attorney, we conclude that the revocation order is appealable as a final order under 28 U.S.C. § 1291. In general, an order is final for purposes of § 1291 if it leaves nothing more for the court to do but execute the judgment. *E. g., Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). The revocation order certainly is final in that sense.

An additional problem is whether an attorney, although technically not a party of record, may avail himself of § 1291 to appeal such an order. We conclude that he can. The attorney is subject to the district court's disciplinary powers, and this order directly binds him by revoking his permission to practice before the district court in this case. In a somewhat analogous context, we have held that an attorney may appeal a contempt order against him pursuant to § 1291. *See Commonwealth v. Local Union 542, International Union of Operating Engineers*, 552 F.2d 498, 501 n.6 (3d Cir.), *cert. denied*, 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977). Because the attorney is a party to the order in the most elementary sense, this case is distinguishable from the situation where the appellant is not directly bound by the order and never intervenes in the district court as a party. *See, e. g., Hoots v. Commonwealth*, 495 F.2d 1095 (3d Cir.) (per curiam), *cert. denied*, 419 U.S. 884, 95 S.Ct. 150, 42 L.Ed.2d 124 (1974).

As to the clients, they seek to assert only their attorney's rights. Although normally a person may not assert the rights of others, one exception is where the interest of the two sets of people are inherently interrelated. *E. g., Carey v. Population Services International*, 431 U.S. 678, 683–84, 97 S.Ct. 2010, 2015, 52 L.Ed.2d 675 (1977).

Here, the clients' interests are undeniably affected in that the order deprives them of the attorney of their choice. Indeed, in *Leis v. Flynt*, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979) (per curiam), the Supreme Court permitted, without comment, both a client and his attorneys to raise the rights of the attorneys relating to denial of pro hac vice status. *Cf. IBM Corp. v. Levin*, 579 F.2d 271 (3d Cir. 1978) (client appealing disqualification on ethical grounds).

■ Accordingly, we conclude that we have jurisdiction to hear the appeal of both the clients and their attorney.

## II.

■ The crucial question in this case involves what procedures should be used where a district court seeks to revoke an attorney's pro hac vice status. As we have noted in the past, we have inherent supervisory power over the district courts to regulate certain procedural matters of significance. *E. g., United States v. Schiavo*, 504 F.2d 1 & n.7 (3d Cir.) (in banc), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974). Here, we believe that some type of notice and an opportunity to respond are necessary when a district court seeks to revoke an attorney's pro hac vice status.

Such procedures are desirable for two reasons. First, although at one time pro hac vice status was considered to be granted and held at the grace of the court, we believe that in this era of interstate practice of law, such a notion cannot be applied too literally or strictly. Second, some sort of procedural requirement serves a number of salutary purposes. It ensures that the attorney's reputation and livelihood are not unnecessarily damaged, protects the client's interest, and promotes more of an appearance of regularity in the court's processes.

As to the type of notice required, flexibility is dictated because in some cases there may be circumstances where formal notice

In addition, the fact that we have affirmed the judgment for the defendants in No. 79–1892 does not necessarily mean that there will be no further proceedings in the district court in which plaintiffs' counsel can participate. The defendants have filed a motion for costs and attorneys' fees, and the district court has entered an order staying its disposition of the motion pending the appeal.

is inappropriate. We therefore leave the form of the notice to the discretion of the district court with the limitation that it adequately inform the attorney of the basis upon which revocation is sought. In short, the attorney should be notified of two things: the conduct of the attorney that is the subject of the inquiry, and the specific reason this conduct may justify revocation.

Obviously this concept of notice requires that the attorney somehow receive notice of the standard that will be applied to his conduct. Here the district court based its revocation order entirely on what it perceived to be violations of the Code of Professional Responsibility. Local Rule 14 of the Eastern District of Pennsylvania makes the Code an applicable standard of professional conduct for members of its bar. At a minimum, a violation of any disciplinary standard applicable to members of the bar of the court would justify revocation of pro hac vice status. We leave open the question whether different cases require different standards.

As to the opportunity to respond, there is the question of whether a full scale hearing is appropriate in every case. We believe that it is not. With an attorney who is a member of the bar of the court, disciplinary matters can be referred to the appropriate disciplinary committee. With a pro hac vice attorney, such a course is obviously not possible. Moreover, because the attorney who is a member of the bar of the court has a continuing relationship with the court, there is more time to take action in disciplinary matters. By contrast, the pro hac vice attorney's status as a member of the court is limited in time to one case, which places certain time constraints on the court.

Therefore, we conclude that a full scale hearing is not required in every case. All that we will mandate is that the attorney be given a meaningful opportunity to respond to identified charges. Of course in certain cases a full hearing might be desirable, but we leave that to the discretion of the district court. We also note that the district court must give written reasons for any revocation. We know the district courts will be mindful of the fact that at least where violations of the Code of Professional Responsibility are involved, any decision could have repercussions in the attorney's "home" state, a fact to be considered in the district court's exercise of its discretion.

Finally, the appellants argue that revocation proceedings must be held before a different judge than the trial judge. We need not decide, however, whether this is true in every case. Given the circumstances of this case and the tension more fully described in No. 79–1892, we conclude that, if the matter of revocation is pursued further, *see* note 1 *supra*, it should be assigned to another judge.

### III.

The appellants contend that they have a right to a full hearing under the due process clause of the fifth amendment to the Constitution. We realize that it is possible that the procedures we have required under our supervisory power might not fully accord the appellants all they seek. Nevertheless, we feel it is inappropriate to address this difficult question at this stage of the proceeding. Even if this matter is pursued in the district court, the new judge may mandate procedures that satisfy the appellants. If not, we feel it is better for the district court in the first instance to consider appellants' contentions about the inadequacy of the procedures.

### IV.

The memorandum and order of the district court will be vacated.