**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**George W. SUMMET, Defendant.**

**Appeal of Jeffrey A. DICKSTEIN, Esq.**

**No. 87–3149.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 1988.

Decided Dec. 14, 1988.

Alexandra Cock, Seattle, Wash., for appellant.

Andrew R. Hamilton, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before WRIGHT, WALLACE and HUG, Circuit Judges.

WALLACE, Circuit Judge:

This appeal is not by a convicted defendant, but by his lawyer. Summet was indicted and convicted, following a five-day

jury trial, for three counts of income tax evasion in violation of 26 U.S.C. § 7201. Summet's lawyer, Jeffrey A. Dickstein, contends on appeal that the district court committed reversible error by finding him in contempt and formally censuring him. The district court had jurisdiction under 26 U.S.C. § 7201. We have jurisdiction to review this order pursuant to 28 U.S.C. § 1291, and we affirm.

## I

Dickstein was admitted to practice law in California in 1976. At the time of the trial, he resided in Anchorage, Alaska. We were advised that at the time of the appeal, he resided in Missoula, Montana. Dickstein was retained by Summet four days before the trial was scheduled to begin. Prior to that time, Summet represented himself. On the morning of trial, Dickstein moved to be admitted for purposes of Summet's case. Pursuant to Western District of Washington General Rule 2(d), a resident counsel, Alexandra Cock, was also retained by Summet. The court admitted Dickstein to practice in the district *pro hac vice.*

The trial was less than placid. The following is a modest sampling of statements made by Dickstein to the district judge during the trial:

> Judge, then you best throw me out because what I'm going to do is defend this man to the best of my ability. I don't know, Sir, where the Court gets off thinking they can control who he has as his attorney when the Constitution says he has a right to counsel of choice.
> May I please finish my sentence before you interrupt, your Honor? I'll attempt to do the same for you.
> We can't tolerate this lack of [sic] abuse of the Court.
> This trial is a mockery, your Honor, and I object strenuously for the record.
> I'd be pleased to stand up for the law, not for this Court though.
> I'd like to represent him [defendant] according to the law, unfortunately that's not present in this courtroom.
> I'm not finished. Are you cutting me off again, your Honor?

> ... and I'll walk around this Court in my normal style to present this case. I'm sorry if I'm offensive to you.
> What we do know is that your Honor appears to be assisting the prosecution by assuming what his objections are.
> I really dislike the self-serving statements of the Court.
> Then perhaps the Court is hard of hearing....
> I was, your Honor, you just cut me off.... Are we playing a game here, Sir?

In addition, the following are some of the statements made by Dickstein in the presence of the jury:

> I will not sit here and be quiet while you prejudice this jury to not give my client a trial by jury.
> This is a sham, your Honor. I won't participate in this any longer.

Moreover, the following statements were made by Dickstein to the jury:

> I don't know if we are going to be able to put on a defense here or not, ladies and gentlemen.
> Every issue the defendant has tried to put in front of this case, the authority on the law says you don't need to know what that is.
> If you were on trial, ladies and gentlemen, is the way this trial was run the way that you would want your trial run?

The district judge advised Dickstein on at least five occasions that failure to follow the rules would result in his exclusion from the court. The judge further advised him once that his "actions border on contentious behavior." Nevertheless, Dickstein was not held in contempt during the trial.

After Summet's conviction, Dickstein moved for withdrawal and substitution of counsel. The court allowed a different local counsel to represent Summet at his sentencing hearing. At that hearing, the government expressed concern about Dickstein's conduct and suggested he should be barred from appearing in district court for the Western District of Washington. Upon permission by the district court, the government filed a "Post–Trial Motion for

Order Precluding Further Appearances *Pro Hac Vice* of Jeffrey A. Dickstein." The government relied on Fed.R.Crim.P. 42(a), which provides for the punishment of criminal contempt, and Western District of Washington General Rule 3(d).[1] Through attorney Cock, Dickstein moved to quash the motion, contending that the district court lacked jurisdiction over him, that the district judge should not preside over the motion, and that he was entitled to attorneys' fees and costs as a sanction. The motion to quash was denied, as was a motion to continue the hearing on the government's motion.

Following the hearing, the district court found that:

> [t]hroughout the trial, in this matter, Mr. Dickstein ignored repeated warnings of the court and continuously challenged, in front of the trier of fact, the authority of this court to administer the trial and to issue rulings of law. The court finds this behavior not only to be contemptuous, but conduct that constitutes obstruction of justice. Mr. Dickstein was ordered by this court to appear on September 11, 1987, to show cause why he should not be precluded from future *pro hac vice* appearances in this district. Despite having received this order, Mr. Dickstein refused to appear as ordered. The court finds this behavior to be contemptuous.

Based upon these findings, the district judge "[ordered] that Attorney Jeffrey A. Dickstein, a resident of Alaska and a member of the California bar, is formally censured and this court's order of May 29, 1987 permitting Mr. Dickstein to appear in a *pro hac vice* status is hereby [revoked]."

## II

Dickstein first argues that the district court improperly held him in contempt. Although the district judge found Dickstein's conduct contemptuous, the district judge did not hold him in contempt. Therefore, we need not reach the question of whether his actions in court and his failure to appear personally rather than by counsel at the hearing of the motion constitute instances of contempt. Similarly, we need not decide whether the district court had power to hold Dickstein in contempt for these acts.

The government moved to prevent Dickstein from appearing *pro hac vice* in the future. The district court did not grant that motion. The district judge merely revoked the order allowing Dickstein to appear *pro hac vice* in Summet's case. Dickstein suffered no prejudice because Summet's case was concluded in the district court. Indeed, Dickstein had moved earlier to be relieved from representing Summet. The order grants his expressed desire.

The only issue remaining is the statement of the district court that Dickstein is "formally censured." Dickstein argues that his fifth amendment due process rights were violated because he did not receive adequate notice. The censure, however, was a much lesser penalty than that moved for by the government.

■ The government's motion cites General Rule 3(d) as a basis for its motion. Pursuant to that rule, Dickstein was subject to a fine or "other discipline as the Court may deem appropriate" for violation of the local rules. Pursuant to General Rule 2(e)(1), Dickstein was required to comply with "the Canons of Professional Ethics, as promulgated by the Washington State Supreme Court." Rule of Professional Conduct 3.5(c), which superseded the Canons, required Dickstein to not "engage in conduct intended to disrupt a tribunal." Without considering the issue of Dickstein's failure to appear personally for the

---

**1.** General Rule 3(d) provides:

> An attorney who without just cause fails to comply with any of the Federal Rules of Civil or Criminal Procedure, or these rules, or orders of the Court, or who presents to the Court unnecessary motions or unwarranted opposition to motions, or who fails to prepare for presentation to the court, or who otherwise so multiplies the proceedings in a case as to increase the cost thereof unreasonably and vexatiously, may, in addition to, or in lieu of the sanctions and penalties provided elsewhere in these rules, be required by the Court to satisfy personally such excess costs, and may be subject to such other discipline as the Court may deem appropriate.

hearing on the post-trial motion, the district court could properly order a formal censure based upon Dickstein's conduct during trial. We believe the notice was adequate. Indeed, we believe the court followed our admonition to consider less severe penalties when sanctioning attorneys. *Miranda v. Southern Pacific Transportation Co.*, 710 F.2d 516, 520 (9th Cir.1983). "We believe that imposing a [less severe] penalty on counsel is an appropriate sanction considerably less severe than holding counsel in contempt, referring the incident to the client or bar association, or dismissing the case. If we were to foreclose the district court from imposing this relatively mild penalty for violation of the local rules, district courts would be forced to resort to more severe sanctions." *Id.* at 520–21.

█ As a second prong of his due process argument, Dickstein argues that he did not have an opportunity to be heard. Without citation of authority or any analysis, he charges that a different district judge should have heard the contempt charges. But the government's motion does not request a finding of contempt and none was made. Dickstein had adequate opportunity to be heard on the government's motion requesting Dickstein not be granted *pro hac vice* status in the future. He chose to send an attorney in his place. He cannot now complain.

█ Finally, Dickstein argues that if he is to be censured under the local rules, it must be to disciplinary proceedings provided for under General Rule 2(e)(2).[2] Gener-

al Rule 2(e) provides a method that may be used for disbarment and discipline. That course could have been followed. But there is nothing in the rules that prevents the district court from acting pursuant to General Rule 3(d) to impose a fine or "other discipline as the Court may deem appropriate." The formal censure fits within this authorization.

AFFIRMED.

---

**2.** General Rule 2(e)(2) provides:

The Court by order shall appoint three members of the bar of this Court as a Committee on Discipline, and this Committee shall have and is hereby vested with all of the powers of a continuing grand jury.

Where it is shown to the Court that any member of the bar of this Court has been suspended or disbarred from practice or has been convicted of a felony subsequent to his admission to the bar of this Court, he shall be forthwith suspended from practice before this Court. He will thereupon be afforded the opportunity to show good cause within 20 days why he should not be disbarred. Upon his response to the order to show cause, he shall be entitled to a hearing as provided in the following paragraph, or upon the expira-

tion of 20 days if no response is made, the Court will enter an appropriate order.

In addition to the foregoing, the Committee on Discipline shall conduct investigations relating to the discipline of members of the bar of this Court, either on it own motion or pursuant to a reference by the Court. If the Committee concludes that there is probable cause for disciplinary action, formal charges shall be filed and served upon such member. A member of the bar of this Court so charged shall have 20 days within which to answer and the matter shall then be tried to the Court. All disciplinary proceedings shall be secret unless the Court shall direct otherwise; provided that any member against whom such charges are filed shall have a right to a public trial if he so requests.