Eddie **SPURLOCK**, Plaintiff,

v.

Charles E. **SIMMONS**,
et al., Defendants.

No. Civ.A. 98–3211–KHV.

United States District Court,
D. Kansas.

Feb. 15, 2000.

Eddie Q. Spurlock, St. Louis, MO, pro se.

Hsing Kan Chiang, Office of Atty. General, Topeka, FL, for defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on *Defendants' Motion For Summary Judgment* (Doc. # 17) filed September 16, 1999, which plaintiff has not opposed, and plaintiff's motion for a pretrial hearing with an interpreter (Doc. # 16) filed September 14, 1999. Because defendants' motion for summary judgment is uncontested, the Court sustains the motion. *See* D.Kan. Rule 7.4 ("If a respondent fails to file a

response ... the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice"). Moreover, as discussed below, the Court finds that defendants have shown good cause to grant summary judgment. The Court therefore also sustains defendants' motion for summary judgment under Fed.R.Civ.P. 56(e), which states that the Court shall enter summary judgment, if appropriate, based on a party's failure to respond.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

In pro se prisoner litigation, the Tenth Circuit endorses the completion and filing of a "Martinez report" where the prison constructs an administrative record detailing the factual investigation of the events at issue. *See Martinez v. Aaron,* 570 F.2d 317, 319 (10th Cir.1978). The Martinez report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir.1997) (citing *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991)). The pro se prisoner's complaint, when sworn and made under a penalty of perjury, is also treated as an affidavit and, like the Martinez report, serves as evidence for a summary judgment determination. *See id.*

### Facts

In this case the Court derives the facts from plaintiff's sworn complaint, the *Martinez* report, and, to the extent that defendants' allegations do not disagree with plaintiff's allegations, defendants' factual

statement in support of their motion for summary judgment,. The following facts are therefore undisputed, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.

Plaintiff is deaf and mute. From August 8, 1997 until July 23, 1998, when he was released from prison, plaintiff was confined at the Lansing Correctional Facility (LCF) in Lansing, Kansas. Plaintiff required use of a telecommunications device for the deaf ("TDD"), a special telephone for individuals with hearing impairments. Because a TDD would not work with the regular inmate telephone system, LCF officials allowed plaintiff to use telephones in the Unit Team Offices for Q2 and Q2/3 cellhouses. Colette Winklebauer, Unit Team manager at LCF, restricted plaintiff's use of these telephones to two 30–minute calls per week. Often, however, prison officials allowed plaintiff to make more than two phone calls per week. When plaintiff needed to use the telephone, a Unit Team official had to unlock the Unit Team office.

Around February 17, 1998, plaintiff asked an LCF official if he could use the TDD to call his fiancee. Plaintiff wanted to see if his fiancee had contacted his attorney. The official refused to allow plaintiff use the telephone because plaintiff was restricted to two 30–minute phone calls per week. Plaintiff informed the official that he had been unable to reach his intended parties when he used the telephone on the previous day. The official nonetheless refused to let plaintiff to use the telephone.

On February 17, 1998, plaintiff filed a grievance which complained that he was allowed access to a telephone only twice weekly. Plaintiff alleged that because of his impairment, defendants treated him different from other inmates with respect to telephone access. An LCF official responded to this grievance, noting that plaintiff had previously abused use of the TDD and that unlike other inmates, plaintiff's use of the TDD required LCF staff assistance. The official further noted that

officials had asked plaintiff to provide a list of the days and times that persons whom plaintiff wanted to call would likely be available. Plaintiff provided such a list.

Plaintiff filed another grievance in April of 1998, stating that LCF General Order No. 16,104, Section c(2) does not set a limit on the number of calls an inmate may make through the inmate telephone system. On April 20, 1998, an LCF official responded to this grievance, stating that this policy did not apply to plaintiff because he was not using the inmate telephones, he was using an LCF facility telephone.

Around the same time, plaintiff filed another grievance which challenged his restricted access to the TDD. After LCF officials denied this grievance, plaintiff appealed to David McKune, Warden of LCF. McKune responded on April 29, 1998, stating that LCF officials had made reasonable accommodations by letting plaintiff use a TDD and that plaintiff could request additional use of the telephone if he had a legitimate reason.

While in prison, plaintiff completed the literacy program. Prison officials believe that plaintiff was able to communicate sufficiently through writing or sign language when an interpreter was available. Plaintiff never expressed any communication problems or requested an interpreter. On January 14, 1998, plaintiff pleaded no contest to a disciplinary report for entering the wrong living unit.

Plaintiff brings this action under 42 U.S.C. § 1983 against McKune; Winklebauer; William L. Cummings, Secretary of Corrections designee; and Charles Simmons, Secretary of Corrections. Plaintiff alleges that defendants (1) violated his right to equal protection by restricting his use of the telephone while allowing other inmates unlimited access and by failing to provide him an interpreter; (2) violated his right of access to the courts by restricting his telephone use; and (3) violated policies and regulations of LCF and the Kansas Department of Corrections ("KDOC")

which allow unlimited telephone access. Plaintiff also alleges that defendants violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

### Analysis

#### 1. Right of Access to the Courts

Plaintiff alleges that defendants violated his right of access to the courts by refusing to let him call his fiancee to see whether she had called his attorney. Plaintiff fails to allege or provide evidence, however, that defendants impeded his ability to conduct a particular case. *See Lewis v. Casey,* 518 U.S. 343, 352–53, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Arney v. Simmons,* 26 F.Supp.2d 1288, 1296 (D.Kan.1998). Plaintiff has made no showing of prejudice to pending or contemplated litigation—no court dates missed, no inability to make timely filings, no denial of legal assistance to which he was entitled, and no loss of a case which could have been won. *Arney,* 26 F.Supp.2d at 1296; *Carter v. O'Sullivan,* 924 F.Supp. 903, 912 (C.D.Ill.1996). Defendants are therefore entitled to summary judgment on this claim.

#### 2. Violation of LCF and KDOC Policies and Regulations/Due Process

Plaintiff alleges that restricting his use of the telephone violates LCF and KDOC policies which provide for unlimited access to inmate telephones. Section 1983 only allows plaintiff to enforce federal constitutional rights, however, not prison regulations. *United States v. Holland,* 66 F.3d 339 (10th Cir.1995) (Table, Text Available in Westlaw at 1995 WL 539589, *2) (citing *Glatz v. Kort,* 807 F.2d 1514, 1517 & n. 4 (10th Cir.1986)). To be actionable under Section 1983, defendants' failure to follow these regulations must therefore have violated some constitutional provision. The Court construes plaintiff's claim as alleging a denial of a substantive or procedural due process right to have unlimited access to inmate telephones. The record here establishes as a matter of law, however, that plaintiff did not suffer the kind of atypical and significant hardship which creates a protected liberty or property interest. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Plaintiff had access to the telephone, albeit it limited access. While other inmates had unlimited access, the differential treatment is not so significant as to create a due process violation. Further, even if the policies provided plaintiff the right to unlimited access, plaintiff cites only one policy: General Order No. 16,104 Section c(2). As LCF officials informed plaintiff, however, this section is specifically limited to the inmate telephone system, and it is uncontroverted that plaintiff cannot use the TDD with this system. The order does not give plaintiff the right to unlimited use of facility phones located in Unit Team offices. The Court awards summary judgment to defendants on plaintiff's claim that prison policies and regulations required unlimited telephone access.

#### 3. Equal Protection

Plaintiff alleges that defendants violated his right to equal protection by (1) failing to provide him an interpreter, which made it more difficult for him to communicate with prison staff; and (2) restricting his use of the TDD. When the government treats plaintiffs differently than it treats similarly situated individuals, it implicates plaintiffs' right to equal protection under the Fourteenth Amendment. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Regarding his first claim, plaintiff fails to provide any specific allegations or evidence of instances when he had trouble communicating with prison staff. *See Phillips v. Calhoun,* 956 F.2d 949, 951 (10th Cir.1992) ("[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings"). Defendants provide affidavits from LCF officials who worked with plaintiff, stating that they had no problems communicating with plaintiff and that he did not express any

difficulties to them. While plaintiff alleges that his reading and writing skills are inadequate, the record shows that he performed well in the LCF literacy program and completed this program. Plaintiff alleges that he was subject to many disciplinary reports and convictions and suggests that he was unable to adequately defend himself because of limited communication skills. The record reveals, however, that plaintiff only had one disciplinary conviction, a charge to which he pleaded "no contest." In sum, the record evidence would not permit a reasonable jury to find that plaintiff had trouble communicating with prison staff. Even assuming that plaintiff's communications with LCF employees were not exactly equal to those of other inmates, the record shows that any communications problems were de minimis and do not rise to the level of a constitutional violation. *See, e.g., Doe v. Bagan,* 41 F.3d 571, 575 (10th Cir.1994); *see also Papasan v. Allain,* 478 U.S. 265, 300, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (J. Powell, concurring in part and dissenting in part). Plaintiff fails to show that defendants violated his equal protection rights by failing to provide an interpreter.

█ Regarding his second claim, plaintiff fails to show that he is similarly situated to inmates who receive unlimited telephone access. "[A]t the heart of any equal protection claim must be an allegation of being treated differently than those similarly situated." *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1998). While plaintiff alleges that he is similarly situated, it is uncontroverted that he cannot use the regular inmate telephone system. Instead, plaintiff must use a facility telephone. As discussed above, inmates only have unlimited access to the inmate telephone system; they do not have unlimited access to facility telephones. Plaintiff is therefore not similarly situated to inmates who are able to use the inmate telephone system. Further, plaintiff fails to show that defendants treated him any differently than other inmates who required use of facility telephones. *See Tonkovich,* 159 F.3d at 532–33. No

reasonable jury could conclude that defendants treated plaintiff differently than similarly-situated inmates.

In addition, even if the record was sufficient to establish differential treatment, plaintiff fails to show the lack of a rational basis for this treatment. Unless plaintiff alleges a violation of a fundamental right or discrimination against a suspect class, defendants only need a rational justification for the different treatment. *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir. 1996). Plaintiff does not allege the violation of a fundamental right nor does he allege status in a protected class. Further, plaintiff fails to show that defendants lacked a rational basis for the differential treatment. Inmates who receive unlimited telephone access do not require staff assistance. On the other hand, at a minimum, plaintiff requires that a staff member unlock the door. The record shows that LCF officials believed that plaintiff was making too many telephone requests and taking too much time away from other job responsibilities. Defendants therefore restricted plaintiff's access to the Unit Team offices. As a matter of law, the record shows that defendants' actions were rationally related to a legitimate penalogical interest. *See Riddle v. Mondragon,* 83 F.3d 1197, 1207 (10th Cir.1996). While plaintiff alleges that he did not abuse his telephone privileges, plaintiff does not provide any evidence that defendants' stated reason is untrue or that they actually acted without justification. Plaintiff fails to meet his burden of producing sufficient evidence for a reasonable jury to find that defendants acted irrationally or arbitrarily when they restricted his telephone use or that the restriction could not conceivably further a legitimate government interest. *See United States v. Phelps,* 17 F.3d 1334, 1344–45 (10th Cir.1994). Defendants are therefore entitled to summary judgment on plaintiff's equal protection claims.

### 3. ADA And Rehabilitation Act Claim

While plaintiff does not include specific claims under the ADA and the Rehabilita-

tion Act, his complaint alleges that defendants violated these provisions and the Court therefore construes plaintiff's complaint as alleging claims under them. Plaintiff alleges that defendants violated Title II of the ADA, which states that:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Section 504 of the Rehabilitation Act similarly provides that:

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be ... subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a).

The elements of plaintiff's ADA claim are identical in all pertinent aspects to the elements of his Rehabilitation Act claim. *See Randolph v. Rodgers,* 170 F.3d 850, 858 (8th Cir.1999); *Nielsen v. Moroni Feed Co.,* 162 F.3d 604, 608 n. 7 (10th Cir.1998). Plaintiff must prove that (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Gohier v. Enright,* 186 F.3d 1216, 1219 (10th Cir.1999); *Pahulu v. University of Kansas,* 897 F.Supp. 1387, 1389 (D.Kan.1995).

The parties do not dispute that plaintiff is disabled. Further, other courts have found that use of prison telephones is a service or activity, as is participating in disciplinary proceedings and other meetings. *See Niece v. Fitzner,* 922 F.Supp. 1208, 1218–19 (E.D.Mich.1996); *Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 211, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). Plaintiff alleges that he was unable to participate fully in prison activities because he could not communicate effectively with prison staff without an interpreter. He also complains that unlike other inmates, he was not allowed unlimited access to a telephone.

ADA regulations provide that "[a] public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). The regulations further require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

The Court first turns to plaintiff's claim that defendants discriminated against him by failing to provide an interpreter. Defendants must provide plaintiff "meaningful access" to prison services and activities. *See Randolph v. Rodgers,* 170 F.3d 850, 858 (8th Cir.1999); *Lee v. New York, Dept. of Correctional Services,* 1999 WL 673339 at *14 (S.D.N.Y.1999). Based on the record evidence, a reasonable jury could only conclude that plaintiff had meaningful access to prison activities without an interpreter. As noted above, LCF officials who worked with plaintiff state that they did not have difficulty communicating with him. Further, other than plaintiff's conclusory allegations, the record does not suggest that plaintiff ever requested an interpreter or mentioned the fact that he was having difficulty communicating with prison staff Without such evidence, defendants are entitled to summary judgment on plaintiff's claim that they discriminated against him by failing to provide an interpreter. *See Randolph,* 170 F.3d at 858; *see also Davoll v. Webb,* 194 F.3d 1116, 1133 (10th Cir.1999) (employee seeking

reasonable accommodation bears burden of initiating process with employer).

■ Regarding plaintiff's claim that defendants discriminated against him by not providing him unlimited access to a telephone, the Court finds that defendants are again entitled to summary judgment. First, the record establishes as a matter of law that plaintiff had meaningful access to a telephone. Defendants allowed plaintiff at least two 30–minute calls per week. In addition, defendants informed plaintiff that he could make additional calls if he had a legitimate reason and the telephone records suggest that LCF officials actually allowed plaintiff to exceed this limit quite often.

Second, even if defendants' restrictions did not allow plaintiff to have meaningful access to the telephone, plaintiff fails to produce evidence that would allow a reasonable jury to find that defendants could reasonably accommodate his request for unlimited phone use. *See Memmer v. Marin County Courts,* 169 F.3d 630, 633 (9th Cir.1999); *Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1162 (10th Cir.1999) (employee bears burden of proving a reasonable accommodation). Plaintiff fails to suggest any accommodation. His complaint and grievances suggest that he believes that LCF staff should be available and able to immediately assist him whenever he finds it convenient to use the telephone, regardless of other job requirements. Such a request would be unreasonable and implausible. *McGuinness v. University of New Mexico School of Medicine,* 170 F.3d 974, 979 (10th Cir.1998) (plaintiff cannot request unreasonable accommodation); *Woodman v. Runyon,* 132 F.3d 1330, 1344 (10th Cir.1997). The only record evidence suggests that such a broad accommodation would place an undue burden on LCF officials. *See Smith,* 180 F.3d at 1179 (if plaintiff meets burden of showing a reasonable accommodation, burden switches to defendant to establish that accommodation is an undue hardship). Defendants are therefore entitled to summary judgment on plaintiff's ADA and Rehabilitation Act claims.

**IT IS THEREFORE ORDERED** that *Defendants' Motion For Summary Judgment* (Doc. # 17) filed September 16, 1999 be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that plaintiff's motion for a pretrial hearing with an interpreter (Doc. # 16) filed September 14, 1999 be and hereby is **OVERRULED** as moot.