Jo Ann ALEXANDER and Dale Alexander,
Plaintiffs-Appellants-Petitioners,

v.

Edward H. RIEGERT and General Casualty
Company of Wisconsin, Defendants-
Respondents.

Supreme Court

*No. 86–1118. Argued October 6, 1987.—Decided November 4,
1987.*

(Also reported in 414 N.W.2d 636.)

For the plaintiffs-appellants-petitioners there were briefs by *DeBardeleben & Snyder,* Park Falls, and oral argument by *Arthur DeBardeleben.*

For the defendants-respondents there was a brief by *Lawrence R. Nash* and *Nash, Podvin, Detlefsen, Tuschscherer & Weymouth, S.C.,* Wisconsin Rapids, and oral argument by *Robert V. Kryshak of Nash, Podvin, Tuscherer, Huttenburg & Kryshak,* Wisconsin Rapids.

STEINMETZ, J.   The issue in this case is whether the trial court properly exercised its discretion in ordering the case to trial and in denying the plaintiffs' motion to amend the scheduling order to allow them to bring in additional witnesses and reopen discovery after the case was prepared for trial. The trial judge, the Honorable Michael W. Brennan, Clark county circuit court, denied the plaintiffs' motion. In an unpublished opinion, the court of appeals affirmed the trial court's exercise of discretion.

We conclude that the trial court order denying the motion was the result of an abuse of discretion because it failed to consider the plaintiffs' interest in having a fair presentation of their case. Accordingly, we reverse the court of appeals affirmance of the trial court order.

The case is unusual in that plaintiffs' first counsel was ordered removed due to a conflict of interest. Plaintiffs' subsequent attorney decided that proper representation required calling three expert witnesses not previously listed by the first attorney: a treating physician, an orthopedic surgeon and an economist.

Plaintiff Jo Ann Alexander suffered serious personal injuries in an automobile collision on January 29, 1982. She was examined and treated by several doctors and a dentist from then until the end of 1985. The Alexanders commenced this action on December 12, 1984, by filing a summons and complaint.

On April 26, 1985, the trial judge issued a scheduling order directing plaintiffs to name their expert witnesses within ten days. Defendants were to name their experts within sixty days thereafter. The pretrial conference was set for August 22, 1985, and the trial was scheduled for September 9, 1985.

Through their first counsel, plaintiffs timely named five medical experts and one non-medical vocational expert. On August 2, 1985, defendants named their vocational expert and chose not to name any independent medical expert. The parties engaged in discovery through depositions, interrogatories, answers and a motion to compel discovery. They submitted proposed special verdict forms and jury instructions as requested. The depositions of witnesses on the first lists were completed by August 26, 1985.

On July 29, 1985, plaintiffs moved to amend the complaint to raise the amount requested in the addendum clause from $100,000 to $300,000, based on newly received information about plaintiff's expected loss of earnings. This increase exposed the defendant driver to personal liability for any amount awarded in excess of his policy limits of $100,000. Defendant Riegert retained independent counsel and filed a motion heard at the August 22 pretrial conference seeking to disqualify plaintiffs' counsel because that firm had previously represented Riegert, albeit on unrelated matters.

The trial judge ruled that a potential conflict of interest existed and on October 15, 1985, ordered plaintiffs' attorney to withdraw from the case. The judge also cancelled the trial date and did not set another date for trial. The judge subsequently denied the attorney's motion for reconsideration of this decision on November 12, 1985.

On April 16, 1986, the Alexanders retained their present counsel. Upon examining the medical records, plaintiffs' successor attorneys discovered apparent inconsistent and contradictory findings of the previously designated physicians. The medical experts named by the first counsel reported plaintiff's injuries variously as injury to soft tissue, a compression fracture of the interior portions of the lumbar vertebrae, and the herniation of a disc between another vertebrae of "questionable clinical significance." The Alexanders' new counsel petitioned for a modification of the original scheduling order in order to call three additional witnesses, two physicians and an economist.

The court permitted the addition of Dr. Samuel Idarraga, who had treated Mrs. Alexander, because he was known to defendants. It was agreed that he was omitted from the original witness list through inadvertence. However, the court denied plaintiffs the right to name an orthopedic surgeon, Dr. William S. Pollard, and an economist, Peter L. Danner.

The trial court stated that "the [first] attorney was picked by the plaintiff and the plaintiff is going to live tactically by most of the decisions that were made" by that attorney. The judge stated that he could schedule a trial date within 45 days, and he denied plaintiffs' motion for modification of the scheduling order. The plaintiffs then sought a discretionary

appeal of this nonfinal order to the court of appeals. The court of appeals affirmed the trial court's decision but it incorrectly referred to a trial court finding that was never made, *i.e.,* "The finding that the conflict of interest did not cause the Alexanders' first attorney to submit an inadequate witness list is not clearly erroneous."

The decision of whether a scheduling order will be modified is within the trial court's discretion, and its decision will only be reversed for an abuse of discretion. *See Neylan v. Vorwald,* 124 Wis. 2d 85, 94, 368 N.W.2d 648, 653 (1985), stating that a trial court may exercise its discretion in controlling its docket. The test is not whether this court agrees with the ruling of the trial court, but whether appropriate discretion was in fact exercised. In *Valiga v. National Food Co.,* 58 Wis. 2d 232, 253, 206 N.W.2d 377 (1973), this court stated: "The conduct of a trial is subject to the exercise of sound judicial discretion by the trial court and its determinations will not be disturbed unless rights of the parties have been prejudiced."

A scheduling order is part of the trial process. Section 802.10(3)(b), Stats., provides that scheduling orders may be modified.[1] There is a substantial body of law upholding the trial court's exercise of discretion

[1]Sec. 802.10(3)(b), Stats., provides as follows:

"(b) *Scheduling order.* The judge shall issue a written order which recites the schedules established. Such order when entered shall control the course of the action, unless modified as herein provided. If at any time it appears that such schedules cannot reasonably be met, the judge may amend the order upon timely motion of any party. Whenever the judge shall determine that he cannot reasonably meet the pretrial date or trial date established, he may amend the order on his own motion."

regarding the admission or exclusion of evidence. However, in this case the potential conflict of interest that convinced the trial court to order a substitution of attorney interfered with the orderly compliance with the scheduling order. A new situation developed which was not contemplated in the original scheduling order.

The constraints of a scheduling order should yield to permit a trial of the true controversy between the parties with full exposition of all available relevant facts. The trial court has the authority to assess costs, if appropriate, against the party seeking to amend the scheduling order, including additional attorney's fees caused by an amendment.

■

Plaintiffs ask the court to adopt a per se rule stating that a conflict of interest taints all of a disqualified attorney's work product. We agree with the court of appeals that the better rule is the one adopted in *First Wis. Mortg. Trust v. First Wis. Corp.*, 584 F.2d 201, 209 (7th Cir. 1978). That is, the facts must be examined in each case to determine whether the conflict actually tainted the attorney's representation of his or her clients. The defendants argue that in this case, the trial court properly exercised its discretion by finding that the first attorney's conflict of interest did not taint his representation of the plaintiffs. We disagree. In this case it was unclear from the record whether the conflict of interest tainted the choice and extent of witnesses or the prior attorney's proper evaluation of the plaintiffs' case. Minimally, the witness list filed left plaintiffs with an unexplained conflict between the doctors' opinions and with no evidence for the jury of the present value of future economic losses.

The trial court found the apparent conflict of interest did not affect the effective representation of plaintiffs. However, the trial court did recognize the pervasiveness of the conflict of interest when it prohibited the first attorney from participating in the selection of the successor counsel. The trial court's prohibition was designed to assure the plaintiffs that to which all litigants are entitled: the single-minded representation of an advocate devoted exclusively to their interests. The trial court deprived plaintiffs of that right by denying them the request to call additional expert witnesses described as necessary. The medical evidence of the first listed witnesses was inconsistent and did not adequately explain Jo Ann Alexander's true injuries. Dr. Pollard allegedly could explain and resolve that conflict if permitted to testify.

The naming of additional expert witnesses would not involve repetitive discovery; it would involve further discovery with the new witnesses. Plaintiffs' present attorney argues that the proposed additional, not substitute witnesses, are persons who should have been named in the first instance. The record does not explain why the first attorney relied on expert witnesses offering contradictory and inconclusive medical opinions or how he expected to prove present value of future loss of earning capacity.

In considering plaintiffs' motion, the trial judge was required to balance the integrity of the scheduling order reflecting the court's calendar and the defendant's apparent completion of trial preparation on the one side. On the other side was plaintiffs' unchallenged assertion that Jo Ann Alexander's medical condition was not described by her own expert witnesses with certainty and consistency. Confusion also

existed because the plaintiff claimed future loss of earning capacity without having a witness to present it to the jury in terms of present value.

Any confusion was created by plaintiffs' prior counsel, not by plaintiff or their present attorney. In this case, modification of the scheduling order would not have resulted in unwarranted delay of the trial. The trial date was already cancelled when the trial court ordered the plaintiffs' first attorney to withdraw. No new trial date had been scheduled. The record does not indicate that the case could not be ready for trial within 45 days even with the additional witnesses.

The true factors to be considered were the defendant's completed preparation and plaintiff's right to present her case in the best and clearest fashion. This apparently meant calling additional witnesses. In this respect, the court abused its discretion when it chose the defendant's argument; the court did not adequately consider plaintiffs' rights in presenting their case. Its denial of the motion clearly prejudiced the plaintiffs' through no fault of their own. In an appropriate case, the balance can be achieved by awarding appropriate costs. This was not a situation involving one attorney asking to revise his or her own approach to a case. Rather, it involved a successor attorney who was unable to present plaintiffs' case properly due to a prior attorney's judgment or decisions which may have been at least influenced by a real or apparent conflict of interest. The motion should have been granted.

*By the Court.*—The decision of the court of appeals is reversed.